IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINSTON KEMPER,<br><br>        Petitioner,<br><br>  vs.<br><br>JAMES YATES, Warden,<br><br>        Respondent. | No. C 07-4666 JSW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered Respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set out below, the petition is denied.

## PROCEDURAL BACKGROUND

On March 2, 2004, a jury in Alameda County Superior Court convicted Petitioner of two counts of first degree residential burglary and found true special allegations that the burglaries were violent felonies because a person other than an accomplice was

present in the residence. (Ex. 7 at 1.)[1] The trial court found that Petitioner had suffered two prior strike convictions and eight prior prison convictions. (Ex. 7 at 1.) He was sentenced to two concurrent terms of 31 years to life in prison for the burglaries and several additional consecutive terms for the prior convictions, for a total term of 59 years to life in state prison. (Ex. 7 at 1.) His conviction and sentence were affirmed by the California Court of Appeal and the California Supreme Court denied his petition for review. (Ex. 7, 11.) His state habeas petitions were denied. (Ex. 13, 14, 16.)

Petitioner subsequently filed a federal petition for writ of habeas corpus on September 10, 2007, and an amended petition in February 2008. On March 5, 2008, Petitioner filed a petition for writ of error coram nobis in the California Supreme Court, which was transferred to the California Court of Appeal and denied. On April 17, 2009, Respondent filed a motion to dismiss the petition for failure to exhaust state court remedies as to four of Petitioner's ten claims. On May 20, 2009, Petitioner filed a motion to stay the petition and hold it in abeyance pending the exhaustion in the state courts of his four unexhausted claims. On March 12, 2010, this Court granted Petitioner's request for a stay. On April 29, 2011, this Court found that Petitioner had exhausted two of the four unexhausted claims and lifted the stay on Petitioner's case, allowing eight of Petitioner's claims to move forward.

## FACTUAL BACKGROUND

The California Court of Appeal summarized the factual background of this case as follows:

> On August 6, 2003, at approximately 4:30 p.m., David Harris went into the home he shared with his mother in Emeryville, California (the Harris residence). Harris was looking for his mother when he noticed Kemper standing in the kitchen. Kemper, who did not appear to see Harris, walked out the back door into the backyard. Harris called 911 and then confronted Kemper in the backyard. Harris successfully prevented Kemper

---

[1] Citations to "Ex." are to the record lodged with the Court by the Attorney General, except where otherwise noted.

2

from leaving until the police arrived. During that period, the two struggled, Kemper swung a mop wringer at Harris and Harris hit Kemper just below his ribs with a baseball bat.

After Kemper was arrested, Harris noticed a door to one of the rooms in the Harris residence had been broken open. The room was rented out to a man named Ove Ofteness. Harris also noticed that two bags had been placed on the front porch, a duffle bag, and a large trash bag which contained a stereo and speaker.[2] Harris had given the stereo to his mother who kept it on a table in the living room. At trial, Harris testified that, less than an hour before he encountered Kemper in the house, the stereo was in the living room and Ofteness's door was closed and locked with a deadbolt. Ofteness testified at trial that, when he left the Harris residence, he always locked his room with a deadbolt lock. Ofteness also testified that the duffle bag found on the front porch belonged to him and that he kept the bag in a corner of his room.

At trial, the prosecutor presented evidence that Kemper committed another similar crime on April 16, 1991. On that day, Kemper was seen walking in front of a house in Berkeley two miles away from the Harris residence. A witness saw Kemper pace back and forth in front of the house and then put on gloves, jump a fence and shake a window of the house. The witness then went for help. The first officer who arrived at the scene noticed a door leading into the house was damaged and appeared to have been forced open. The officer found Kemper in the house with jewelry in his hand. Kemper gave police a false name and later tried to flee from the police car that transported him after his arrest. When the owner of the residence arrived home, she found her television set in a plastic bag on the kitchen floor.

Kemper testified at trial that he walked by the Harris residence on August 6, 2003, while he was out looking for items to recycle. He noticed some items were left on the curb outside the Harris residence. He took the items onto the porch and then went around the outside of the house to the backyard with the intention of asking permission to take the items he had found. Kemper testified that, as he entered the backyard, he saw someone leave by jumping the fence. Then Kemper saw David Harris who accused him of stealing. As Kemper threw up his hands, Harris hit him with a bat.

(Ex. 7 at 2.)

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state

---

[2] Two officers who responded to the 911 call that Harris placed testified at trial that it is common for burglars to collect the items they steal from a home at an intended point of exit and that this practice is referred to as "staging."

3

court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*,

4

501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## DISCUSSION

As grounds for habeas relief, Petitioner asserts that: (1) he received ineffective assistance of trial counsel; (2) the prosecutor committed misconduct in filing a false information; (3) a suggestive identification process violated Petitioner's right to a fair trial; (4) the admission of other crimes evidence violated Petitioner's right to due process; (5) the trial court erroneously allowed a bailiff to be present in the witness stand during his testimony; (6) the trial court violated Petitioner's due process rights by failing to properly instruct the jury regarding other crimes evidence; (7) the prosecutor engaged in vindictive prosecution; and (8) the prosecutor committed misconduct in making statements that conflicted with the evidence.

### I. **Ineffective Assistance of Counsel**

Petitioner contends that his trial counsel was ineffective for failing to investigate or interview witnesses. (Pet. at 6.)[3] The record shows that Petitioner was represented by Assistant Public Defender Browne during pretrial proceedings and at trial, and Michael Lew joined Ms. Browne as co-counsel for trial. Petitioner states that Lew was the fourth public defender assigned to his case, and that he first met Lew on the morning of trial. (*Id.*)

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must show that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability

---

[3] The pages of the petition have been assigned numbers sequentially, beginning with the title page.

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Id.*

Petitioner only makes vague and conclusory allegations that his counsel failed to conduct an appropriate investigation or interview witnesses. Petitioner does not describe the investigation that counsel should have conducted or allege any facts that counsel would have gained from such investigation. *See Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986) (defendant's claim of ineffective assistance of counsel failed because he did not state what additional information would be gained by the discovery he claimed was necessary). Petitioner also does not identify any witnesses that counsel should have interviewed or describe any exculpatory testimony that these purported witnesses would have provided. *See Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001) (defendant's mere speculation that witness might have given helpful information if interviewed is not enough to establish ineffective assistance). Petitioner thus has failed to establish that counsel's failure to investigate was deficient or prejudicial. The rejection of this claim by the state courts was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

## II.     **Prosecutorial Misconduct**

Petitioner's claims two, three, and eight, listed above, all assert prosecutorial misconduct. A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to

6

make the resulting conviction a denial of due process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted). In addition, habeas petitions must establish that the "error had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

### A.     Claim Two: Filing of a False Information

Petitioner's second claim is that the prosecutor violated his right to due process when he filed an information charging petitioner with special allegations, even though the trial court had dismissed them at the preliminary hearing. (Pet. at 6.) At the conclusion of the preliminary hearing, the trial court found sufficient evidence to support two counts of first degree burglary, but not to support special allegations that "another person, other than an accomplice, was present in the residence during the commission of the burglary" (California Penal Code § 667.5(c)(21)). Consequently, the trial court dismissed the special allegations. (Ex. 1 at 75-76.) Eleven days later, however, the prosecutor filed an information re-charging the special allegations under section 667.5(c)(21) as to each count of burglary. (Ex. 1 at 1-3.)

The prosecutor's filing an information with the special allegations was authorized under California law. *See People v. San Nicolas*, 34 Cal. 4th 614, 653-54 (2004). Under California law, the fact that a magistrate strikes a special circumstance allegation at a preliminary hearing for insufficient evidence "does not preclude the prosecutor from later filing an information charging the same matter omitted by the magistrate from the order of commitment."[4] *Id.* Petitioner does not cite, and this Court is unaware of any Supreme Court precedent that prohibits a prosecutor from filing an information with special

---

[4]In *San Nicolas*, the court noted that the "defendant may move to have the allegation set aside if the defendant had been committed without reasonable or probable cause." 34 Cal. 4th at 654. At no time during the trial did Petitioner file such a motion challenging the special allegations in the information.

7

allegations that were not sustained at the preliminary hearing. As the prosecutor's conduct was allowed under state law and not prohibited by any federal law, habeas relief is not warranted on this claim.

### B. Claim Three: Suggestive Identification Procedure

Petitioner claims that the prosecutor committed misconduct in causing a suggestive in-court identification by one of the prosecution witnesses. (Pet. at 7.) Respondent asserts that the claim is procedurally defaulted from federal habeas review.

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 750.

The California Supreme Court rejected Petitioner's claim as untimely, citing to *In re Robbins*, 18 Cal. 4th 770, 780 (1998), and *In re Clark*, 5 Cal. 4th 750, 797-798 (1993). (Attachment to 2/18/11 Motion to Amend.) "[B]ecause the California untimeliness rule is not interwoven with federal law, it is an independent state procedural ground, as expressed in *Clark/Robbins*." *Bennett v. Mueller,* 322 F.3d 573, 581 (9th Cir. 2003). Furthermore, California's timeliness rule is adequate. *Walker v. Martin*, 131 S. Ct 1120, 1131 (2011). Petitioner's claim is procedurally defaulted from federal habeas review because California's timeliness rule is independent and adequate, and Petitioner has not attempted to demonstrate either cause for the default and actual prejudice or a

8

fundamental miscarriage of justice.[5]  *See Coleman*, 501 U.S. at 750.  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### C. Claim Eight: Statements that Conflicted with the Evidence

Petitioner claims that the prosecutor committed misconduct while cross-examining him about his testimony that a "mystery jumper" left the victim's yard at the same time that Petitioner was entering it.  (Pet. at 8.)  The prosecutor asked Petitioner, "Are we the first people that you've told about this mystery jumper?"  (Ex. 3E at 619.)  Petitioner answered by stating, "Perhaps not.  I had a *Marsden* hearing which all this information."  (*Id.*)  At that point, defense counsel objected on the basis of attorney-client privilege.  (*Id.*)  The court then instructed Petitioner not to discuss what he told his attorneys.  (*Id.*)  The prosecutor proceeded to ask, "Aside from anything you may have talked to your attorneys about, are we the first people in this courtroom here?"  (*Id.*)  Petitioner answered that he also told the judge at the *Marsden* hearing.  (*Id.*)  The trial court again advised the Petitioner not to discuss that in front of the jury, and overruled defense counsel's several objections, stating that Petitioner "brought it up. [The prosecutor] has a right to cross-examine him about the jumper."  (*Id.*)  Petitioner proceeded to testify that he never told a friend, his daughter, or any other relative about the "mystery jumper."  (*Id.* at 623.)

Petitioner argues that the prosecutor committed misconduct in implying that Petitioner failed to assert his innocence and was lying about the "mystery jumper."  (Pet. at 8.)  Specifically, he contends that the questioning violated *Griffin v. California*, 380 U.S. 609 (1965), because it was a comment on his silence at trial, and *Doyle v. Ohio*, 426 U.S. 610 (1976), because it was a comment on his post-Miranda invocations of silence.  (Pet. at 11.)

---

[5] In light of this conclusion, Respondent's alternative arguments that the claim is untimely or lacks merit need not be reached.

9

There is clearly no *Griffin* error because the petitioner testified at trial. As for *Doyle*, "[a] state prosecutor may not seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest; use of a defendant's post-arrest silence in such manner violates due process." 426 U.S. at 611 (1976). This Court need not decide whether a *Doyle* error exists because the prosecutor's questions were not prejudicial; they did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. The prosecutor's questions were brief and she did not comment on Petitioner's silence about the " jumper" during her closing argument. Furthermore, the evidence against Petitioner was strong. David Harris testified that he saw Petitioner in his kitchen, followed him into the backyard, and struggled with him until the police arrived. Evidence of Petitioner's 1991 burglary also went to show Petitioner's intent to commit burglary when he entered the Harris residence. The simple, brief reference to Petitioner's silence did not have a "substantial and injurious effect in determining the jury's verdict" because it was not used during the prosecutor's closing argument, and the other evidence against Petitioner was strong. *Brecht*, 507 U.S. at 637. Accordingly, any error was harmless and Petitioner is not entitled to relief on this claim.

### III.  Other Crimes Evidence

Petitioner argues that the trial court violated his right to due process by admitting evidence of his 1991 burglary conviction. (Pet. at 7.)

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due

process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Absent such a ruling from the United States Supreme Court, a federal habeas court cannot find the state court's ruling was an "unreasonable application" of "clearly established federal law" under AEDPA. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)). Thus, habeas relief cannot be granted under AEDPA on Petitioner's claim that the admission of his 1991 burglary conviction violated his right to due process. *See id.* at 1101 n.2 (finding that although the trial court's admission of irrelevant and prejudicial evidence violated due process under Ninth Circuit precedent, such admission was not contrary to, or an unreasonable application of, "clearly established Federal law" under Section 2254(d)(1), and therefore not grounds for granting federal habeas relief).

Petitioner is not entitled to federal habeas relief on this claim because the state courts' rejection of this claim was neither contrary to, nor an unreasonable application of clearly established federal law.

**IV.    Presence of the Bailiff**

Petitioner argues that his due process rights were violated when the court allowed a bailiff to stand in the witness stand during Petitioner's testimony. Petitioner claims that the bailiff "manhandle[d]" him throughout his testimony, over defense objection. (Pet. at 7.) In its opinion, the state appellate court stated that "a deputy was nearby [Petitioner] when he testified at trial." (Ex. 7 at 4.)

Courtroom security arrangements at trial may be so prejudicial as to deprive a criminal defendant of a fair trial in violation of due process. *See Holbrook v. Flynn*, 475 U.S. 560, 569 (1986). "To be sure, it is possible that the sight of a security force within the courtroom might under certain conditions 'create the impression in the minds of the jury that the defendant is dangerous and untrustworthy.'" *Id.* (citations omitted). A federal court's review of security arrangements is very limited, however. *Ainsworth v.*

11

*Calderon*, 138 F.3d 787, 797 (9th Cir.), *amended*, 152 F.3d 1223 (1998). All it may do is look at the scene presented to the jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to the defendant's right to a fair trial. *See id.* If the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over. *See, e.g., Holbrook*, 475 U.S. at 569.

The California Court of Appeal rejected Petitioner's argument that the bailiff's presence was inherently prejudicial, holding that his argument was at odds with *People v. Jenkins*, 22 Cal. 4th 900 (2000) (citing *Holbrook*, 475 U.S. 560, 569). (Ex. 7 at 4.) The court went on to find that Petitioner has "not identified anything in the record which even suggests that he was prejudiced by the presence of a security guard during his trial testimony." (Ex. 7 at 5.)

The California Court of Appeal's reasoning is sound. The security procedures employed in Petitioner's trial were not inherently prejudicial. In *Holbrook*, the Court concluded that the presence of four uniformed security officers sitting behind the defendants at trial was not inherently prejudicial. 475 U.S. at 571. If "uniformed guards sitting directly behind a defendant need not be interpreted as a sign that he is particularly dangerous or culpable," *Hayes v. Ayers*, 632 F.3d 500, 522 (9th Cir. 2011), then the presence of merely one bailiff in the witness stand during Petitioner's testimony certainly is not inherently prejudicial either. Petitioner alleges that he was "manhandled" by the bailiff, but he does not provide any details as to how he was "manhandled" or what the bailiff did other than remain near Petitioner when he testified. As a result, Petitioner has also failed to show actual prejudice because he does not point to any indication in the record or any other evidence that his jury was influenced or prejudiced by the bailiff's presence.

The state courts' rejection of this claim was neither contrary to, nor an

12

unreasonable application of federal law, and Petitioner is not entitled to federal habeas relief on this claim.

### V. Jury Instruction on Other Crimes Evidence

Petitioner claims that the trial court erred in instructing the jury pursuant to CALJIC No. 2.50.1 regarding other crimes evidence. (Pet. at 7.) The California Supreme Court rejected this claim as untimely in the same order that it rejected Petitioner's third claim, with a citation to *In re Robbins*, 18 Cal. 4th 770, 780 (1998), and *In re Clark*, 5 Cal. 4th 750, 797-798 (1993). (Attachment to 2/18/11 Motion to Amend.) For the same reasons stated above in section II(B) with respect to Petitioner's third claim, this claim is procedurally defaulted.

### VI. Vindictive Prosecution

Petitioner claims that the prosecutor engaged in vindictive prosecution by attempting to add three additional charges after he filed a *Marsden* motion. (Pet. at 8.) First, twelve days before the preliminary hearing, the prosecutor attempted to add a special allegation to the first count of burglary – the burglary of Millie Harris's residence. (Ex. 1 at 80-84.) Second, at the same hearing, the prosecutor also sought to add a second count of burglary – the burglary of the locked, rented room of Ove Oftenness. (*Id.*) Third, at the end of the preliminary hearing, the prosecutor attempted to add an additional charge of robbery of David Harris. (Ex. 1 at 75-76.)[6]

A prosecutor violates a defendant's due process rights when he brings additional charges solely to punish the defendant for exercising a constitutional or statutory right. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). Petitioner has the burden to show that "charges of increased severity were filed because the accused exercised a statutory,

---

[6]The trial court dismissed the robbery charge because "[a]ny uncharged felony can be charged by the person reading the transcript for the information. I am not going to make any holding order on an uncharged felony." (Ex. 1 at 75.)

13

procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982). "The doctrine of vindictive prosecution must not be misapplied by blurring the distinction between what is actual retaliation and what is presumed. The presumption applies only to the extent it reflects the very real likelihood of actual vindictiveness." *Id.* at 1167.

Petitioner fails to satisfy his burden of showing vindictive prosecution. The special allegation that the prosecutor tried to add to the charge of burglary of Harris's house states that "another person, other than an accomplice, was present in the residence during the commission of the burglary" (under California Penal Code § 667.5(c)(21)). The addition of this allegation was supported by police reports that David Harris was present in his house when he found Petitioner in his kitchen, and that he followed Petitioner into his backyard and struggled with him to prevent him from fleeing. Because the special allegation was supported by the police reports and David Harris's statements that he was present during the commission of the burglary, and it arose from the same facts as the burglary of Harris's home, Petitioner has failed to show that the allegation was added out of actual vindictiveness.

Petitioner also fails to prove actual vindictiveness as to the second count of burglary as well. The police reports also supported this additional charge, and it also arose from the same operative facts as the original burglary count. The second count of burglary was based on evidence that Petitioner robbed the locked room rented by Ove Oftenness inside Millie Harris's house. Under California case law, a "rented room . . . equipped with a lock and key," is a "separate residence." *People v. Wilson*, 208 Cal. App. 3d 611 (1989); *People v. O'Keefe*, 222 Cal. App. 3d 517 (1990) (because "each individual dormitory room is a dwelling within the meaning of section 459, separate entries occurred"). Because the police reports and California case law supported the second count of burglary, Petitioner has failed to show that adding this count was done

14

out of vindictiveness. Lastly, even if the prosecutor was acting vindictively in trying to add the robbery charge,[7] it had no effect on Petitioner because the trial court denied the prosecutor's motion to add it and Petitioner was never charged with the robbery.

Not only has Petitioner failed to prove actual vindictiveness, he does not provide any evidence to support a presumption of vindictiveness. When there is no evidence of actual vindictiveness, and vindictiveness must be presumed, cases in which the charges increased after trial are to be sharply distinguished from cases like the instant case, in which the prosecution increased charges during pretrial proceedings. *See Gallegos-Curiel*, 681 F.2d at 1167. There is no evidence in any words or actions by the prosecutor that he bore animus or hostility towards Petitioner, let alone that this motivated any of his actions. The mere fact that the prosecutor attempted to add three charges during pretrial proceedings does not satisfy Petitioner's burden of showing presumed vindictiveness "[b]ecause the prosecutor may properly reevaluate information as the case develops," and "should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Id.* at 1168.

Because Petitioner does not provide any evidence that the prosecutor's actions would not have occurred "but for hostility or punitive animus towards the defendant" *Gallegos-Curiel*, 681 F.2d at 1168-69, Petitioner is not entitled to federal habeas relief on this claim.

## **CONCLUSION**

After a careful review of the record and pertinent law, the petition for writ of habeas corpus is DENIED.

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the

---

[7] It is noted that Petitioner has not come close to making such a showing.

constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: April 13, 2012

                                                   _____
                                                   JEFFREY S. WHITE
                                                   United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

WINSTON KEMPER,

        Plaintiff,

  v.

JAMES YATES et al,

        Defendant.
                             /

Case Number: CV07-04666 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 13, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Winston H. Kemper
B64476
P.O. Box 8500
Coalinga, CA 93210

Dated: April 13, 2012

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk